UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIANCA CASTILLO, *on behalf of herself, individually, and on behalf of all others similarly-situated,* and WILBERT HARRIS, JR.,

                         *Plaintiffs,*

v.

AVI FOOD SYSTEMS, INC.,

                         *Defendant.*

No. 24-CV-6591 (KMK)

ORDER & OPINION

---

Appearances:

Bianca Castillo
Yonkers, NY
*Pro Se Plaintiff*

Sharan Rachel Abraham, Esq.
Borrelli & Assocs.
Garden City, NY
*Counsel for Plaintiff Wilbert Harris*

Austin Hee, Esq.
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendant*

Timothy S. Anderson, Esq.
Littler Mendelson, P.C.
Cleveland, OH
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Bianca Castillo ("Castillo") brought this Action against Defendant AVI Foodsystems ("Defendant") pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29

U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), §§ 160 et seq., and the New York Codes, Rules and Regulations ("NYCRR") §§ 146 et seq.[1] (*See generally* Compl. (Dkt. No. 1).) Before the Court are two settlement agreement applications for Castillo and opt-in Plaintiff Wilbert Harris ("Harris") (together with Castillo, "Plaintiffs"); each is the second such application submitted on Plaintiffs' behalf. (*See* Letter Application for Settlement Approval ("Castillo Second Application") (Dkt. No. 49); Letter Application for Settlement Approval ("Harris Second Application") (Dkt. No. 51).) For the following reasons, both Applications are denied without prejudice.

## I. Background

### A. Factual Background

As described in the Complaint, Castillo was employed by Defendant "as a cashier, grill worker, and food preparer" from on or about August 28, 2022, until on or about May 2, 2023. (Compl. ¶¶ 2, 32.) Castillo states that while she was employed by Defendant, she regularly worked six days a week and would complete between 45.5 to 55 hours of work in a given week. (*Id.* ¶ 37) Nevertheless, she says, she would receive payment for fewer than 40 hours of work. (*Id.* ¶ 38.) Castillo further alleges that Defendant had agreed to pay her at a regular hourly rate of $18.00 and an overtime hourly rate of $27.00, but in fact paid her a regular hourly rate of $15.30 and an overtime hourly rate of $22.95. (*Id.* ¶¶ 34–35.) Castillo says that Defendant failed to pay her overtime premiums for work completed in excess of 40 hours a week and failed

---

[1] Defendant is listed as "Avi Food Systems Inc." in the Complaint and in the case caption, (*see generally* Compl; Dkt.), but the Parties jointly refer to Defendant as "AVI Foodsystems, Inc." in their applications for settlement approval, (*See, e.g.*, Letter Application for Settlement Approval ("Castillo First Application") (Dkt. No. 40)).

to pay her the additional "spread of hours" pay she was entitled to when working a shift that exceeded 10 hours, instead compensating her at the minimum wage rate. (*Id.* ¶¶ 38–39.)

Castillo asserts various wage and hour violations based on her allegations. Specifically, Castillo alleges that Defendant: (1) failed to pay premium overtime pay in violation of the FLSA, NYLL, and NYCRR, (*id.* ¶¶ 51–63); (2) failed to pay a lawful minimum wage in violation of the NYLL and NYCRR, (*id.* ¶¶ 69–74); (3) failed to pay wages on a timely basis in violation of the NYLL, (*id.* ¶¶ 64–68); (4) failed to pay a "spread of hours" premium for each day she worked a shift over 10 hours, in violation of the NYLL and NYCRR, (*id.* ¶¶ 75–80); (5) failed to provide wage statements and related notices in violation of the NYLL, (*id.* ¶¶ 87–96); (6) made unlawful deductions in violation of the NYLL, (*id.* ¶¶ 81–86); and (7) retaliated against Castillo in violation of the FLSA and NYLL, (*id.* ¶¶ 97–111). Accordingly, Castillo seeks to recover unpaid wages, unpaid overtime wages, liquidated damages, statutory damages, punitive damages, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, and an injunction and a declaratory judgment against Defendant. (*Id.* at 22–24.)[2]

B.  Procedural Background

Castillo filed this putative collective action on August 30, 2024, and Harris joined as an opt-in Plaintiff. (*See* Compl.; Letter Application for Settlement Approval ("Harris First Application") 1 (Dkt. No. 47).) Although Harris later filed a stipulation to dismiss his claims, the Court rejected it. (*See* Harris First Application 1.) Castillo's counsel filed a motion to withdraw, which the Court granted on February 14, 2025. (*See* Dkt. No. 33 (Order).) Castillo continued to proceed pro se. (*See generally* Dkt.)

---

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page. The Court does so here because the Complaint does not number the relevant paragraphs.

In March 2025, Castillo and Defendant sought approval of a proposed settlement agreement. (*See generally* Castillo First Application). In June 2025, Harris and Defendant proposed a similar agreement for the Court's approval. (*See generally* Harris First Application.) On July 16, 2025, the Court denied the Parties' Applications without prejudice.

On September 11, 2025, Castillo and Defendant sought approval of a new proposed settlement agreement. (*See* Letter Application for Settlement Approval ("Castillo Second Application") (Dkt. No. 49)). On October 1, 2025, Harris and Defendant again proposed a similar agreement for the Court's approval. (*See* Letter Application for Settlement Approval ("Harris Second Application") (Dkt. No. 51)).

Separately, a dispute emerged between Castillo and her former counsel regarding her payment of $1,073.70 in litigation costs. (*See* Letter from Bianca Castillo to Court (Mar. 14, 2025) at 1 (Dkt. No. 41).) Castillo wrote Magistrate Judge Krause to explain that she received a notice from her former counsel demanding payment. (*See id.*) Judge Krause ordered Counsel to submit a letter to the Court explaining the basis for the payment demand and elaborating "how the firm's demand for payment . . . should be evaluated in the context of . . . the parties' application for settlement approval." (Dkt. No. 42 at 2–3 (Order).) Counsel submitted a letter to Judge Krause asserting that the firm was entitled to recoup the amount as half of the total costs expended in litigating the case. (*See* Letter from Sharan R. Abraham, Esq., to Court (Mar. 25, 2025) 3 (Dkt. No. 45).) In that letter, Counsel stated that the firm had "no objection to the Court reviewing" the filings regarding costs "in conjunction with its [settlement] review," but requested that the Court order Defendant to hold the disputed expenses in escrow while arbitration was ongoing. *Id.* at 5.

4

On September 17, 2025, Counsel filed a letter requesting that the Court order $1,073.70 of Castillo's settlement be paid directly to the law firm. (*See* Mot. for Attorneys' Fees 1 (Dkt. No. 50).) In that letter, Counsel represented that Castillo and the law firm had arbitrated their fee dispute and that the Firm was awarded $1,073.70 by the arbitrator; it attached the arbitration award as an exhibit. (*Id.* at 2; Mot. for Attorneys' Fees Ex. A, at 2–5.) Counsel modified the initial request that the disputed expenses be held in escrow, and asked instead that the Court order Defendant pay $1,073.70 from its settlement with Ms. Castillo directly to the firm. (Mot. for Attorneys' Fees at 2.)

## II. Discussion

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has held that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016). Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a

position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As multiple courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (internal quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks omitted). To this end, courts require information regarding:

> "the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award."

*Id.* (first alteration in original) (internal quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

A. Analysis

    1. Settlement Fairness

        a. Good Faith

The Court is satisfied that both settlement agreements were negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. In their joint submissions to the Court, the Parties represented that their negotiations were fair. (*See* Castillo Second Application at 7 ("[T]he parties represent to the Court that this settlement is a fair and reasonable resolution of a bona fide dispute reached as a result of arm's length negotiations."); Harris Second Application at 5 (same).) Castillo reportedly "sought legal advice while she negotiated the settlement, and . . . initiated [the settlement negotiations] . . . during a Status Conference with Magistrate Judge Krause, during which he urged the parties to attempt to resolve Plaintiff's claims." (Castillo Second Application at 7.) Harris has consistently been "represented by experienced counsel, and the parties engaged in extensive settlement negotiations following an exchange of documents and information before reaching an agreement, after which they further

7

negotiated the non-monetary terms of the settlement." (Harris Second Application at 5.) These facts reflect a good faith settlement process.

### b. Similarly Situated Employees

The first *Wolinsky* factor—i.e., the presence of similarly situated employees—was not addressed in either proposed settlement agreement. Still, as the Court explained in its last order, this factor weighs in favor of approval. *Castillo v. AVI Food Sys. Inc.*, No. 24-CV-6591, 2025 WL 1949135, at *3 n.3 (S.D.N.Y. July 16, 2025). Despite this case being filed as a putative collective action, Harris was the lone additional plaintiff who opted in once the case was initiated. *Id.* Moreover, the proposed settlement agreements are limited to each Plaintiff's respective claims and would not encompass claims on behalf of any similarly situated employees. *Id.* The Court is not aware of the presence of any other similarly situated Plaintiffs, meaning this factor weighs in favor of approving the settlements. *See Montes v. Cnty. Comfort Home Sols., Inc.*, No. 23-CV-7579, 2024 WL 5004676, at *4 (S.D.N.Y. Dec. 6, 2024) (reasoning that both the absence of other employees coming forward, and a settlement being limited to the plaintiff, each are "factors that support approval of the proposed settlement"); *Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (same); *Penafiel*, 2015 WL 7736551, at *2 (same).

### c. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v.*

8

*Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *4 (S.D.N.Y. Feb. 3, 2023) (same).

To that end, releases must generally be related to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted). In light of this standard, "a number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." *Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) (alteration adopted and quotation marks omitted). Broad releases are problematic in FLSA proposed settlement agreements, in part because "courts have a duty to police unequal bargaining power between employees and employers." *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015). Since the release provision is virtually identical in both agreements, the following analysis applies to both. Here, the Proposed Settlement Agreement provides that:

> Castillo hereby promises not to sue and forever releases and discharges the Company, including its related, affiliated, and associated companies, direct or indirect parent or subsidiary companies, divisions, predecessors, successors, and assigns, and their owners, officers, directors, agents, employees, and attorneys ("Released Parties") from any and all claims, damages, costs, and attorneys' fees, known or unknown, under any federal, state, or local statute, regulation, or ordinance, which she may now have against the Released Parties, that related in any way to her compensation or otherwise arise out of the facts alleged in the Lawsuit, except as set forth in Paragraph 5 of this Agreement ("Released Claims"). The Released Claims include, but are not limited to, (1) all claims for unpaid compensation, wages, overtime, minimum wages, improper wage deductions, spread of hours pay, call-in pay, business expenses, timely pay, wage

>statement violations, and wage notice violations; (2) all retaliation and wrongful discharge claims, including those under the FLSA and NYLL, stemming from alleged complaints regarding improper pay ; (3) all claims Castillo asserted or could have asserted relating to her contention that the Company failed to pay her the amount it promised to pay her; and (4) all claims for liquidated damages, compensatory damages, punitive damages, penalties, attorneys' fees, interests and/or costs, arising out of the released claims set forth above. Castillo also waives any right to become, and promises not to consent to become, a participant, member, or named representative of any class or collective in any case in which Released Claims are asserted against the Company that involve events that have occurred prior to the date she signs this Agreement.[3]

(Castillo Second Application Ex. 1 ("Castillo Agreement"), at 3.)  Defendant asserts that this release "is, as directed by the Court, limited to wage-and-hour claims asserted in the instant action or arising from the facts alleged in the lawsuit," and on those grounds claims that it is a permissible term.  (Castillo Second Application at 7.)

The terms of the release, however, are not limited to the claims asserted in the instant action or arising from the facts alleged in the lawsuit.  Rather, the agreement would release "any and all claims . . . that related in any way to [Castillo's] compensation."  (Castillo Agreement at 3.)  This provision is overbroad; it could potentially extinguish claims "related" in some way "to [Plaintiffs'] compensation," (*id.*), that nevertheless "have no relationship whatsoever to the claims at issue in this case," *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (quoting *Cheeks*, 796 F.3d at 206–07); *accord Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *4 (S.D.N.Y. Oct. 5, 2020). It would appear to encompass "for example, prospective discrimination claims."

---

[3] The only apparent differences between the Castillo and Harris releases are either non-substantive (*i.e.*, the two documents use different pronouns to refer to Harris and Castillo), or appear to be scrivener's errors (*i.e.*, Harris's agreement covers "any and all claims . . . that relate in any way to his compensation" while Castillo's encompasses "any and all claims . . . that related in any way to her compensation"). (Castillo Agreement at 3; Harris Second Application Ex. 1 ("Harris Agreement"), at 2.)

10

*Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017).  It therefore is overbroad, rather than "expressly limited to the conduct underlying the claims" asserted here.  *Zekanovic*, 2020 WL 5894603, at *4; *see also Rojas*, 2018 WL 4931540, at *3 ("Although the release provision is limited to FLSA and NYLL claims, it is not expressly limited only to the conduct underlying the claims in this case."); *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *5 (S.D.N.Y. June 14, 2022) (approving release "from all actions . . . concerning wage and hour matters including any and all claims arising under the FLSA, the NYLL, and the Wage Theft Prevention Act" (alterations adopted)); *Mahalick v. PQ N.Y. Inc.*, No. 14-CV-899, 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) ("An employer is not entitled to use an FLSA claim to leverage a release from liability unconnected to the FLSA." (alternations and internal quotation marks omitted)); *Abreu v. Torti Food, Corp.*, No. 20-CV-10643, 2023 WL 5051885, at *3 (S.D.N.Y. July 14, 2023) (finding release clause overbroad in part because it "may include claims unrelated to [the instant] lawsuit").

    d. Fairness and Reasonableness

  To assess whether the settlement amounts are fair and reasonable, the Court must consider each Plaintiff's maximum potential for recovery.  *Leonardo v. Reza Fast Food, Inc.*, No. 20-CV-8879, 2022 WL 2440975, at *2 (S.D.N.Y. July 5, 2022).

  In the Proposed Settlement Agreement, Defendant agrees to pay Castillo a total sum of $4,000; $3,000 in back wages and $1,000 in statutory penalties, with no deductions for attorneys' fees or costs.  (Castillo Agreement at 2–3; Castillo Second Application at 1.)  The Parties did not make a representation as to Castillo's best-case total recovery.  (*See generally* Castillo Second

11

Application.) However, they appear to think the best-case maximum would be approximately $40,579.91—the sum of the maximum recovery based on Defendant's asserted failure to pay the promised hourly rate ($3,478.13), Castillo's minimum wage and overtime claims ($8,464.50), her wage statement and notice claims ($10,000), her spread of hours claim ($584), her failure to pay wages on a timely basis claim ($3,276.65), her liquidated or punitive damages claim ($12,526.63), and her wrongful termination and retaliation claims ($2,250). (Castillo Second Application at 4–6.) Without considering the costs that Castillo's former counsel seeks to recover, Castillo's recovery pursuant to the settlement would be approximately 9.86%. (*See id.*) This recovery amount is generally acceptable. *See McPherson v. Look Ent. Ltd.*, No. 23-CV-4273, 2025 WL 43165, at *3–4 (E.D.N.Y. Jan. 7, 2025) (holding that a settlement amount equivalent to 8.5% of the plaintiffs' best-case-scenario recovery was acceptable); *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974, 2024 WL 4250337, at *18–19 (E.D.N.Y. Mar. 13, 2024) (concluding that a settlement that made up 16% of the best-case-scenario recovery was reasonable, and collecting cases).

However, the Parties have "provide[d] no supporting declarations or exhibits substantiating the accuracy of the calculations or the sufficiency of the amount awarded to Plaintiff." *Abreu*, 2023 WL 5051885, at *2; *see also Lopez*, 96 F. Supp. 3d at 177 ("The parties' submission lacks also any declarations, affidavits or exhibits substantiating its arguments. In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable."); *Pascual v. Three Diamond Diner Corp.*, No. 21-CV-3333, 2023 WL 1518513, at *3 (S.D.N.Y. Feb. 3, 2023) ("Defendants have produced records that undermine Plaintiffs' wage and hour and overtime theories."). Although the production of records is not a hard-and-fast requirement, the Court has an obligation to ensure a fair agreement,

12

and to develop the record sufficiently to evaluate fairness. *See Montes*, 2024 WL 5004676, at *3 (denying a motion for settlement approval because the Parties failed to provide a detailed calculation of the settlement amount); *Zekanovic*, 2020 WL 5894603, at *3 (same); *Gaspar*, 2015 WL 7871036, at *3 (noting that although the court was satisfied with the parties' explanation of the methodology used to generate settlement amounts, the parties failed to submit the "underlying data" to which the methodology was applied (emphasis omitted)). The Parties provided a summary of the hours Castillo says she worked and the disputed hourly rates, but Defendant also makes various factual assertions about Castillo's likelihood of proving her claims without providing supporting documentation. (*See* Castillo Second Application at 4 (claiming that Castillo was unlikely to succeed on a claim because her offer letter assertedly "states that it was for a 'Cook' position" but not appending the offer letter); *id.* (asserting that an expert report disproving Castillo's claim was "attached hereto as Exhibit 2," but failing to include second exhibit).) This information is central to the Court's task of assessing the sufficiency of the amount awarded to Castillo.

Defendant agrees to pay Harris a total sum of $8,625, inclusive of attorneys' fees and costs; $2,338.15 in back pay, $2,338.15 in statutory penalties, and $3,948.70 in attorneys' fees and costs. (Harris Agreement at 1–2; Harris Second Application at 1.) The Parties did not make a representation as to Harris's best-case total recovery. (*See generally* Harris Second Application.) However, it seems that they think the best-case maximum would be approximately $18,628.29, which represents the sum of his maximum recovery based on unpaid minimum wages ($6,814.29), timely pay, wage notice, and wage statement claims ($5,000), and liquidated damages ($6,814.29). (*Id.* at 3–4.) Harris's recovery therefore represents approximately 46.3%.

13

(*See id.*).  This recovery amount is acceptable.  *See McPherson*, 2025 WL 43165, at *3–4; *Caccavale*, 2024 WL 4250337, at *18–19.

> e. Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)).  Although courts may elect to award fees by considering either the lodestar method (the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended) or the percentage method (a percentage of the total amount recovered by the plaintiffs) "[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Burgos v. JAJ Cont. Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *4 (S.D.N.Y. Aug. 14, 2024) (same).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award."  *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records.").  A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation omitted).  The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits."  *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

14

In the award proposed for Harris, his counsel would receive fees totaling $2,875, or one third of his overall recovery. (Harris Agreement at 2.) Courts regularly approve settlement agreements that include attorneys' fees that represent one third of a plaintiff's overall recovery. *Pinzon v. Jony Food Corp.*, No. 18-CV-105, 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) ("[T]he proposed fee award is 33% of the total settlement amount."); *Cano v. Nineteen Twenty Four, Inc.*, No. 15-CV-4082, 2017 WL 11507654, at *6 (E.D.N.Y. Apr. 24, 2017) ("Class Counsel's request for one-third (1/3) of the settlement amount is reasonable."); *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015). "Even if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020). Rather, the Court also considers the lodestar amount that Harris's counsel would be entitled to based on their time and efforts in this case, as well as their degree of success and the other factors that determine a "reasonable rate." *See, e.g., Pinzon*, 2018 WL 2371737, at *3; *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).

Harris's counsel has requested hourly rates of $500.00 for Michael J. Borrelli, founding and managing member of their firm, who has been in practice for over twenty-three years; $450.00 for Alexander T. Coleman, partner at their firm, who has been in practice for over fifteen years; $300.00 for senior associate Sharan R. Abraham; and $90.00 for the time of law clerks and paralegals. (Harris Second Application at 6; Harris Second Application Ex. 3, at 2–3.).

These hourly rates appear to be on the high end of reasonable (perhaps beyond the bounds of what is considered the "going rate" in the local market), and above what Counsel has been awarded as a rate in similar cases cited in the Application. *See, e.g., Alvarez v. Fine*

*Craftsman Grp., LLC*, No. 20-CV-10452, 2024 WL 3730569, at *3 (S.D.N.Y. Aug. 6, 2024) ("Courts in this district have approved hourly rates for partners of $600 per hour in FLSA and NYLL suits." (collecting cases)); *Caltenco v. G.H. Food Inc.*, No. 16-CV-1705, 2021 WL 4481205, at *6 (E.D.N.Y. Sept. 30, 2021) (awarding a $400 hourly rate for Borelli, $350 for Coleman, and $90 for paralegals); *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2021 WL 4894181, at *4 (E.D.N.Y. Oct. 20, 2021) (awarding a $400 rate for Borrelli).

Still, the Court "need not determine the reasonableness" of the cited rates in this case, given that the proposed fee award is significantly below the asserted lodestar, and would remain within the appropriate lodestar multiplier range even if the rates were adjusted downwards. *See Bonaventura v. Gear Fitness One NY Plaza LLC*, No. 17-CV-2168, 2021 WL 1907290, at *2 (S.D.N.Y. Apr. 26, 2021). According to the documentation and calculations submitted by Plaintiff's counsel, the lodestar would be $11,587.00 in fees. (Harris Second Application at 6.) The amount sought has a multiplier of less than 0.25 of the claimed lodestar. This is well within the appropriate lodestar multiplier range. *Johnson v. Brennan*, No. 10-CV-4712, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.") (citation omitted); *Davis v. T&T Express Shipping, LLC*, No. 22-CV-01936, 2024 WL 1077890, at *2 (S.D.N.Y. Feb. 14, 2024).

### f. Other Factors

None of the other factors that weigh against finding a settlement fair and reasonable appear present here. There is no evidence in the record, for instance, to suggest "a likelihood that the claimant's circumstance will recur" or a broader "history of FLSA non-compliance by

the same employer or others in the same industry or geographic region." *Wolinsky*, 900 F. Supp. 2d at 336.  Other than the issues described above, the record appears appropriately "mature" and there does not seem to be any need for a "pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id.*

Castillo's status as a pro se plaintiff does not bar the Court from approving the settlement if it is fair and reasonable.  *See Coker v. Turner Cnty. Bd. of Comm'rs*, No. 17-CV-119, 2019 WL 13301633, at *1 (M.D. Ga. Nov. 22, 2019) (approving a settlement agreement, despite the plaintiff's pro se status, and accepting representation that all parties "had the full opportunity to read and review the settlement agreement and discuss the same with counsel"); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 12-CV-718, 2013 WL 2338496, at *7 (M.D. Pa. May 29, 2013) (approving a settlement involving pro se plaintiff, and observing that pro se status reduced any "risk that self-interested counsel is seeking a resolution of the claims on terms that are most beneficial to counsel"); *cf. Vasquez v. Sylhet Motors Inc.*, No. 21-CV-959, 2024 WL 1051114, at *1 (E.D.N.Y. Jan. 16, 2024) (report and recommendation) (noting that corporate defendant proceeding pro se does not preclude approval of a *Cheeks* agreement)); *Naraine v. Washdry Tech Inc.*, 749 F. Supp. 3d 398, 406 (E.D.N.Y. 2024) (same).

2. Attorneys' Costs

In light of the deficiencies with the settlement agreements described above, it would be premature for the Court to determine whether the costs Castillo's former counsel asserts the firm is due should, in fact, be paid directly by Defendant to the firm.  Counsel is requested to provide supplemental authority for the proposition that the Court could, in fact, issue such an order in the absence of the firm having a lien on Castillo's recovery in this case; any filing is due by October

24, 2025. Castillo is requested to indicate by October 31, 2025, whether she opposes Plaintiff's motion.

### III.  Conclusion

For the reasons set forth above, the Parties' Applications are denied without prejudice. Castillo's former counsel is ordered to provide supplemental authority regarding the Motion for Attorneys' Fees by October 24, 2025, and Castillo is ordered to indicate any opposition by October 31, 2025.

SO ORDERED.

Dated:  October 16, 2025
          White Plains, New York

KENNETH M. KARAS
United States District Judge