

**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY 10022.3298

Austin Hee
212. 471.4424 main
347.745.3597 fax
AHee@littler.com

January 15, 2026

<u>**VIA ECF**</u>
Honorable Kenneth M. Karas
United States District Court
300 Quarropas Street, Chambers 533
White Plains, NY 10601

Re:     ***Bianca Castillo v. AVI Foodsystems, Inc.***
        **Docket No.: 7: 24-cv-06591-KMK**
        **Renewed Motion for Approval of Settlement of Claims of Opt-in Plaintiff Wilbert Harris**

Dear Judge Karas:

    AVI Foodsystems, Inc. ("Defendant" or "AVI") and Opt-in Plaintiff Wilbert Harris ("Plaintiff" or "Harris") respectfully renew their request for judicial approval of their revised settlement agreement, attached hereto as Exhibit A (the "Agreement"), which complies with the Court's October 16, 2025 Order, pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015), denying without prejudice the Parties' previous application for settlement approval. (ECF No. 53). The amended agreement resolves Harris's disputed claims, originally brought by Plaintiff Bianca Castillo in a putative class and collective action that Harris opted into, under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the N.Y. Comp. Codes R. & Regs. ("NYCRR"), for alleged unpaid overtime and minimum wages and related violations, including failure to pay wages timely, spread-of-hours pay, unlawful deductions, inaccurate wage statements, and failure to provide wage notices.

    Following the Court's October 16, 2025, denial without prejudice of the Parties' motion for approval of the settlement, the Parties revised the settlement agreement to limit the scope of the release to claims asserted in the complaint or otherwise arising out of the facts alleged in the complaint. More specifically, the scope of the release is now limited to:

        any and all claims, damages, costs, and attorneys' fees, known or unknown, arising under the FLSA and/or NYLL, that were asserted in the Complaint, or that arise from the conduct alleged in the Complaint, except as set forth in Paragraph 5 of this Agreement ("Released Claims"). The Released Claims include, but are not limited to, (1) claims for unpaid overtime; (2) claims for failure to pay wages on a timely basis; (3) claims for unpaid minimum wages; (4) claims for violation of a spread of hours requirement; (5) claims for unlawful deductions from wages; (6) claims for failure to provide accurate wage statements; and (7) claims for failure to provide accurate wage notices.

Per the Court's order, this release is limited to the seven claims in the lawsuit that were brought on behalf of Ms. Castillo and all others similarly-situated, and claims arising out of the facts alleged in the lawsuit.

The revised agreement represents a fair resolution of this dispute. It provides for the payment of a gross sum of Eight Thousand Six Hundred Twenty-Five Dollars and Zero Cents ($8,625.00) to Harris. Pursuant to the Agreement, Harris will receive Two Thousand Three Hundred Thirty-Eight Dollars and Fifteen Cents ($2,338.15) in back wages, less applicable taxes and withholdings, and Two Thousand Three Hundred Thirty-Eight Dollars and Fifteen Cents ($2,338.15) in statutory penalties and interest with the remaining amount being allocated to attorneys' fees and costs.

In addition, as set forth below, the Parties have revised their motion for approval of the settlement by providing estimates of Harris's maximum recovery should the case proceed to a trial and he prevails, as well as the basis for a settlement of less than that amount based on Defendant's defenses to Harris's claims. With respect to Harris's best-case total recovery, the parties believe that it would amount to approximately $18,628.58, calculated as follows:

Minimum Wage, Overtime and Unlawful Deductions - $6,814.29

Wage Statement - $5,000.00

Liquidated Damages - $6,814.29

Total Possible Recovery - $18,628.58

Given these figures, Harris's settlement amount constitutes 46.2% of his possible recovery if he prevailed on all of his claims and recovered statutory penalties and liquidated damages. As set forth in the Court's order, this figure is well within the range deemed acceptable. (Order & Opinion, ECF No. 53 at p. 12). For the reasons set forth below, which are now supported by a declaration and documentary evidence, given the litigation risks faced by Plaintiff in this case, as well as Defendant's defenses, the settlement amount reflects a reasonable resolution of Plaintiff's claims.

In addition, in response to the reference in the Order & Opinion as to the presence of similarly-situated employees, the parties are not aware of any alleged similarly-situated employees other than Ms. Castillo, whose settlement agreement is addressed in a separate motion. (ECF No. 56).

For all of the reasons set forth below, the Parties ask that the Court approve the revised settlement agreement.

## I.    <u>RELEVANT BACKGROUND</u>

On August 30, 2024, Plaintiff Bianca Castillo filed a hybrid class and collective action lawsuit asserting claims against Defendant AVI for alleged unpaid overtime, unpaid minimum wages, failure to pay wages on a timely basis, failure to pay spread of hours pay, unlawful deductions, and failure to furnish accurate wage statements and wage notices under the FLSA and NYLL, as well as individual retaliation claims. (ECF No. 1). That same day, Wilbert Harris filed

a consent to join the lawsuit "in its entirety and with respect to any wage and hour-related claims asserted in the complaint filed in this matter and/or under any Federal and/or state law, rule, or regulation." (ECF No. 7).

On February 24, 2025, Harris filed a Stipulation of Voluntary Dismissal dismissing his claims in the Lawsuit without prejudice. (ECF No. 37). But the following day, the Court rejected the stipulation as deficient because all parties to the lawsuit did not consent to his dismissal. Harris did not file a corrected stipulation, thereby remaining an Opt-in Plaintiff in the lawsuit. Thereafter, as a result of reasonable negotiations between the parties, on May 22, 2025, Harris and AVI reached an agreement to resolve his claims.

## II.     THE SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc*., 900 F.Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F.Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp*., No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019) (citation and internal quotation marks omitted). Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *See Wolinsky*, 900 F.Supp. 2d at 335 (citation and internal quotation marks omitted). Based on these factors, the proposed settlement should be approved as fair and reasonable.

### A.     First *Wolinsky* Factor: Plaintiff's Range of Possible Recovery

The first *Wolinsky* factor supports approval of the settlement. As a preliminary matter, as Harris ended his employment with AVI in or around July 2021, it is undisputed that his claims under the FLSA are time-barred. 29 U.S.C. § 255; N.Y. Lab. Law § 215(2)(a). (Declaration of Jeffrey M. Wharry at ¶ 2, attached hereto as Exhibit B). Harris' only claims, therefore, are those under the NYLL for unpaid minimum wages, unpaid overtime, late payment of wages, spread-of-hours pay, unlawful deductions, wage notice violations, and wage statement violations. For those claims, Harris asserts he is owed $6,814.29 in alleged unpaid overtime wages, minimum wages, and spread of hours pay premised on his disputed claim that he performed four hours of off the clock work each week that he worked for AVI between January 14, 2018 and March 22, 2020. Harris seeks an equal amount in liquidated damages. In addition, Harris claims he is entitled to statutory penalties of $5,000 for wage statement violations.

AVI, however, vigorously disputes Harris's claims. Harris worked for AVI at its Pratt Institute account as a Utility Worker. (Wharry Dec. ¶ 3). In that role, he punched a time clock prior to starting work and after his work concluded. (Wharry Dec. ¶ 3, Ex. 1). AVI claims it paid Harris for all hours he worked, as reflected by those punch records, which AVI claims are consistent with

his payroll records. (*Id.*). AVI denies that anybody at AVI directed Harris to work off-of-the-clock, or that he complained to anyone during his employment at AVI that his supervisor required him to work off-the-clock. (*Id.*). As such, AVI does not believe that Harris will be able to establish that he worked off-of-the-clock. If Harris cannot prove by a preponderance of the evidence that he worked off-the-clock, his overtime and minimum wage claims will fail, as will his derivative claims for purported late payment of wages, unlawful deductions, and wage statement violations. On top of that, Harris's time records do not reflect any spread of hours violations, as he was paid for spread of hours pay when his time records indicate that he entitled to such pay. (Wharry Dec. ¶ 4, Ex. 2).

Even if Harris could prove that he worked off-of-the-clock, AVI disputes his damages computations. Harris's exposure analysis is premised on the assumption that he worked full weeks every week from January 14, 2018 to March 22, 2020. He, however, worked at a school. (Wharry Dec. ¶ 5). There were frequent week-long shutdowns for holidays, fall and spring breaks, and over the summer. (*Id.*). AVI's records also reflect that he normally took at least one week-long vacation each year, and his analysis fails to account for short workweeks, sick days, and paid time off. (*Id.*).

What's more, for the reasons set forth above, Defendant does not believe Plaintiff will be able to establish that he worked off-of-the-clock, which would preclude him from recovering actual damages. But even if he could demonstrate that he worked off-the-clock, Defendant does not believe that he would be able to show that AVI knew or should have known that he worked off the clock, as the time and payroll records reflect that AVI paid Harris for all hours that he was clocked in and provided him with wage statements that reflected those hours. (Wharry Dec. ¶¶ 3, 4).

Harris obviously disputes AVI's defenses and its exposure calculation. (See Declaration of Wilbert Harris ¶¶ 3-7, attached hereto as Exhibit C). Nonetheless, it is undisputed that if this case proceeded through litigation, there is the potential that Harris may recover nothing. As such, the Parties believe that the settlement amount of $8,625.00 is fair and reasonable, as it exceeds Harris's alleged out-of-pocket damages by nearly $2,000.

To further address these issues, each of Plaintiff's potential claims are addressed in turn below.

> ### i.    Plaintiff's Minimum Wage, Overtime, and Unlawful Deductions Claims

Harris contends he is owed $6,814.29 in unpaid minimum wages for work performed in 2018, 2019, and early 2020, premised on the assertion that he worked four hours off-the-clock each week during that time period. Based on his hours worked, Harris does not claim an entitlement to unpaid overtime damages, and his unlawful deduction claim is derivative of his minimum wage claim, insofar as Harris asserts that AVI made unlawful deductions from his wages when it failed to properly pay him for all hours worked at his regular rate of pay.

AVI adamantly maintains that Harris never worked off-the-clock while employed by AVI, never complained about improper payment during his employment, and is not entitled to any minimum wage, overtime, or unlawful deduction damages. (Wharry Dec. ¶ 3). Indeed, Harris's time and pay records reflect that AVI consistently paid him for the hours he recorded when

clocking in and out. (*Id*.). Accordingly, while Harris contends he is entitled to $6,814.29 in unpaid minimum wages, AVI asserts that he is entitled to nothing.

### ii.    Plaintiff's Timely Pay, Wage Notice, and Wage Statement Claims

Harris does not claim damages under § 195(1) for a wage notice violation, but he does assert a claim for inaccurate wage statements. However, AVI asserts that it timely paid Harris for all hours he reported working and issued compliant wage statements to him. (Wharry Dec. ¶ 4, Ex. 2). Accordingly, while Harris contends he is entitled to statutory penalties in the amount of $5,000 for AVI's failure to furnish accurate wage statements on each pay day and liquidated damages for AVI's failure to pay him all of his earned wages at least as frequently as on a weekly basis, AVI denies that he is entitled to such penalties.

### iii.    Plaintiff's Spread of Hour Claim

Harris's potential recovery for his spread-of-hours claim under 12 NYCRR § 146-1.6 is zero. The regulation provides that an employee must be compensated with one additional hour of pay at the applicable minimum wage for each day in which the spread of hours—the interval between the beginning and end of the workday, including breaks and off-duty periods—exceeds 10 hours. Harris does not allege he worked any spread of hour shifts and is not claiming damages in relation to this claim. Regardless, AVI's records reflect that he was properly paid the spread-of-hours premium whenever his shift exceeded ten hours. (Wharry Dec. ¶ 4).

### iv.    Plaintiff's Liquated Damages Claim

Harris claims entitlement to liquated damages for his NYLL unpaid wage claims in the amount of $6,814.29, as he contends that AVI was aware of his off the clock work, as it was his direct supervisor who instructed him to continue working after clocking out. (Harris Dec. ¶¶ 3, 6). AVI, however, asserts that Harris is not entitled to liquidated damages, as its records show Harris was properly paid for all hours worked, it denies that he was instructed to work off the clock, and that it had a good faith belief that it properly paid Harris for all hours worked based on his time records. (Wharry Dec. ¶¶ 3, 4). *Perez v. Postgraduate Ctr. for Mental Health*, No. 19-CV-0931(EK)(PK), 2021 U.S. Dist. LEXIS 156116, at *28 (E.D.N.Y. Aug. 18, 2021)(denying summary judgment for the plaintiff's liquated damages claim when a reasonable juror could find that the defendant acted in good faith when it had "adduced evidence that it kept records of Plaintiff's time, provided wage statements to Plaintiff, and paid Plaintiff for all of the overtime work that he recorded").

## B.   Remaining *Wolinsky* Factors

The second and third *Wolinsky* factors also favor approval of the settlement. The settlement enables Harris to receive a substantial recovery while avoiding the need to confront the risks of trial, going through the discovery process and being deposed, as well as the substantial costs and delays of protracted litigation. It likewise enables AVI to avoid the attorneys' fees and costs associated with further litigation. If this litigation extended through a trial and an appeal, it is likely that Harris would not see any recovery, even if he prevailed, for a matter of years. In addition to AVI's defenses asserted above and the disputes over Harris's potential damages, if any, the

litigation risk to Harris is very real and there are no guarantees that Harris would obtain a successful verdict.

As to the fourth and fifth *Wolinsky* factors, the parties represent to the Court that this settlement is a fair and reasonable resolution of a *bona fide* dispute reached as a result of arm's length negotiations. Harris is represented by experienced counsel, and the parties engaged in extensive settlement negotiations following an exchange of documents and information before reaching an agreement, after which they further negotiated the non-monetary terms of the settlement. Further, neither party asserts there is any evidence of fraud regarding the settlement, weighing in favor of approval of the settlement.

In addition, the red-flag issues identified in *Cheeks* are not present here. The Agreement does not contain any terms that would weigh against the Court approving it. *See Perez v. 66 Meat Corp.*, No. 22 Civ. 7003, 2024 WL 2716851, at *5 (E.D.N.Y. May 28, 2024) (finding that the settlement agreement did "not include the typical provisions that preclude approval, including (1) overbroad releases; (2) highly restrictive confidentiality provisions; (3) non-disparagement provisions that bar truthful statements . . . "). The release in the revised settlement agreement is, as directed by the Court, limited to wage-and-hour claims asserted in the instant action or arising from the facts alleged in the Lawsuit, so it does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *Pernal v. Proflame Inc.*, No. 21 Civ. 4526 (JMW), 2022 WL 16636689, at *4 (E.D.N.Y. Nov. 2, 2022) (approving the settlement agreement with a release that was limited to the plaintiffs' FLSA and NYLL claims); *Seecharan v. Heritage Place* LLC, No. 20 Civ. 3898 (WFK) (LB), 2021 WL 1299692, at *4 (E.D.N.Y. Mar. 15, 2021) ("[T]he release is limited to unpaid overtime wages and should be approved."); *Morales v. Fross, Zelnick, Lehrman & Zissu, P.C.*, No. 21 Civ. 04509 (PMH), 2021 U.S. Dist. LEXIS 233363, at *2 (S.D.N.Y. Dec. 6, 2021) (approving an agreement settling FLSA claims with a "release provision [that was] appropriately limited to wage-related claims . . . ").

Additionally, the agreement does not contain a confidentiality provision or a non-disparagement clause that may run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair. *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2750 (AT) (GWG), 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-81 (S.D.N.Y. Mar. 30, 2015)); *Pernal*, 2022 WL 16636689 at *4 (approving the settlement agreement because, among other provisions, it did not contain a confidentiality provision that would have otherwise been a problematic provision flagged in *Cheeks*); *Cheeks*, 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions . . . in strong tension with the remedial purposes of the FLSA'").

Accordingly, the settlement achieved in this action reflects an arm's-length negotiation, absent from fraud or collusion, and is a reasonable compromise over the contested *bona fide* issues in this lawsuit.

Furthermore, the costs and attorneys' fees are reasonable. Pursuant to the settlement agreement and agreement between Harris and his counsel, of the $8,625.00 settlement amount, $3,948.70 is allocated to his counsel, which includes $1,073.70 for reimbursable expenses. Counsel's fees, without including expenses, are one-third of the overall settlement, amounting to

$2,875.00.[1] The amount provided to Harris's counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. Further, Harris's counsel has received a similar percentage in many SDNY and EDNY cases, such as *Argudo v. Rugo, LLC et al.*, Case No. 1:21-cv-05511-GHW; *Ramirez, et al. v. 1701 Pizza Ltd. d/b/a Luigi's Pizza, et al.*, Case No. 1:21-cv-00792-ALC-SDA; *Egan et al. v. Safeway Construction Enterprises, Inc. et al.*, Case No. 1:19-cv-02052-PK; *Villalta et al. v. Advanced MEPF Services Corp. et al.*, Case No. 1:19-cv-05014-TAM; *Hobson et al. v. Manage Transit Corp. et al.*, Case No. 1:19-cv-02695-LB; *Sullivan et al. v. 10 Washington Ave. Food, Inc. et al.*, Case No. 2:19-cv-00245-AKT; and *Belliard et al. v. Koryeo Int'l Corp. et al.*, Case No. 14-cv-03495-ENV-ST.

Additionally, the reasonableness of Plaintiff's counsel's requested fee is solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, counsel multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of September 22, 2025, Plaintiff's counsel has billed 52.90 hours in total on this matter, amounting to $11,587.00 in fees, an amount in excess of counsel's attorneys' fees requested herein.[2] Timesheets for Harris's counsel are attached as Exhibit D. This figure is based on hourly rates of: $500.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's managing partner; $450.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $300.00 per hour for Sharan R. Abraham, a senior associate with over three years of experience in employment litigation; and $90.00 for law clerks and paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Egan et al. v. Safeway Construction Enterprises, Inc. et al.*, Case No. 1:19-cv-02052-PK, Dkt. No. 222, Decision and Order (E.D.N.Y. June 9, 2025); *Feuer et al. v. Cornerstone Hotels Corp. and Naeem Butt*, 2:14-cv-05388-JFB-SIL, Dkt. No. 121, Order (E.D.N.Y. Oct. 20, 2021); *Caltenco v. G.H. Food Inc., d/b/a Natural Garden, and Gurdip Singh*, 1:16-cv-01705-VMS, Dkt. No. 112, Memorandum and Order (E.D.N.Y Sept. 30, 2021). Biographical information for each of the attorneys who performed work on this case is attached hereto as Exhibit E.

*                    *                    *

For the foregoing reasons, the parties respectfully request that the Court approve the attached settlement agreement as fair and reasonable, and retain jurisdiction to enforce the terms of the parties' Agreement. We thank the Court for its time and consideration.

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.

By:    /s/ Sharan R. Abraham
          Sharan R. Abraham, Esq.

---

[1] Harris agreed, upon retaining counsel, to pay 40% of the settlement as a counsel fee, however counsel seeks only one-third of the settlement.

[2] The timesheets submitted and the lodestar analysis address time dedicated to Harris's individual claims. All time spent on the case generally, or time spent working on Castillo's individual claims, were billed separately. Counsel will provide the additional billing information should the Court request it.

910 Franklin Avenue, Suite 205
Garden City, New York 11530
Tel: (516) 248-5550
Attorneys for Plaintiff

LITTLER MENDELSON P.C.

By: _____ */s/ Timothy Anderson*_____
    Timothy Anderson
    127 Public Sq, Key Tower,
    Ste 1600
    Cleveland, Ohio 44114
    Tel: (212) 623-6118
    Attorney for Defendant