UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIANCA CASTILLO, *on behalf of herself, individually, and on behalf of all others similarly-situated*, *et al.*

                                *Plaintiffs*,

      v.

AVI FOOD SYSTEMS, INC.,

                                *Defendant*.

Case No. 24-CV-6591 (KMK)

ORDER & OPINION

---

Appearances:

Bianca Castillo
Yonkers, NY
*Pro se Plaintiff*

Sharan Rachel Abraham, Esq.
Borrelli & Associates, PLLC
Garden City, NY
*Counsel for Plaintiff Wilbert Harris, Jr.*

Austin Hee, Esq.
Timothy S. Anderson, Esq.
Littler Mendelson
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

       Plaintiff Bianca Castillo ("Castillo") brought this Action against Defendant AVI

Foodsystems[1] ("Defendant") pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29

---

     [1] Defendant is listed as "Avi Food Systems Inc." in the Complaint and in the case caption, (*see generally* Compl; Dkt.), but the Parties have jointly referred to Defendant as "AVI Foodsystems, Inc.," and so the Court follows their convention.

U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), §§ 160 et seq., and the New York

Codes, Rules and Regulations ("NYCRR") §§ 146 et seq.  (*See generally* Compl. (Dkt. No. 1).)

## I.  Background

### A.  Factual Background

As alleged in the Complaint, Castillo was employed by Defendant "as a cashier, grill

worker, and food preparer" from on or about August 28, 2022, until on or about May 2, 2023.

(Compl. ¶¶ 2, 32.)  Castillo states that while she was employed by Defendant, she regularly

worked six days a week and would complete between 45.5 to 55 hours of work in a given week.

(*Id.* ¶ 37.)  Despite working these hours, she would receive payment for fewer than 40 hours of

work.  (*Id.* ¶ 38.)  Castillo further alleges that Defendant had agreed to pay her at a regular hourly

rate of $18.00 and an overtime hourly rate of $27.00, but in fact paid her a regular hourly rate of

$15.30 and an overtime hourly rate of $22.95.  (*Id.* ¶¶ 34–35.)  Castillo says that Defendant

failed to pay her overtime premiums for work completed in excess of 40 hours a week and failed

to pay her the additional "spread of hours" pay she was entitled to when working a shift that

exceeded 10 hours, instead compensating her at the minimum wage rate.  (*Id.* ¶¶ 38–39.)

Castillo asserts various wage and hour violations based on her allegations. Specifically,

Castillo alleges that Defendant: (1) failed to pay premium overtime pay in violation of the FLSA,

NYLL, and NYCRR, (*id.* ¶¶ 51–63); (2) failed to pay a lawful minimum wage in violation of the

NYLL and NYCRR, (*id.* ¶¶ 69–74); (3) failed to pay wages on a timely basis in violation of the

NYLL, (*id.* ¶¶ 64–68); (4) failed to pay a "spread of hours" premium for each day she worked a

shift over 10 hours, in violation of the NYLL and NYCRR, (*id.* ¶¶ 75–80); (5) failed to provide

wage statements and related notices in violation of the NYLL, (*id.* ¶¶ 87–96); (6) made unlawful

deductions in violation of the NYLL, (*id.* ¶¶ 81–86); and (7) retaliated against Castillo in

violation of the FLSA and NYLL, (*id.* ¶¶ 97–111). Accordingly, Castillo seeks to recover unpaid wages, unpaid overtime wages, liquidated damages, statutory damages, punitive damages, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, and an injunction and a declaratory judgment against Defendant. (*Id.* at 22–24.)

B. Procedural Background

Castillo filed this putative collective action on August 30, 2024, and Harris joined as an opt-in Plaintiff. (*See* Compl.; Letter from Timothy Anderson, Esq. and Sharan R. Abraham, Esq. (June 16, 2025) ("Harris First Application") 1 (Dkt. No. 47).) Although Harris later filed a stipulation to dismiss his claims, the Court rejected it. (*See* Harris First Application 1.) Castillo's counsel filed a motion to withdraw, which the Court granted on February 14, 2025. (*See* Dkt. No. 33 (Order).) Castillo continued to proceed pro se. (*See generally* Dkt.)

In March 2025, Castillo and Defendant sought approval of a proposed settlement agreement. (*See generally* Letter from Timothy Anderson, Esq. and Bianca Castillo to Court (Mar. 14, 2025) ("Castillo First Application") (Dkt. No. 40).) In June 2025, Harris and Defendant proposed a similar agreement for the Court's approval. (*See generally* Harris First Application.) On July 16, 2025, the Court denied the Parties' Applications without prejudice. *See Castillo v. AVI Food Sys. Inc.*, No. 24-CV-6591, 2025 WL 1949135 (S.D.N.Y. July 16, 2025).

On September 11, 2025, Castillo and Defendant sought approval of a new proposed settlement agreement. (See Letter from Timothy Anderson, Esq. and Bianca Castillo to Court (Sept. 11, 2025) ("Castillo Second Application") (Dkt. No. 49)). On October 1, 2025, Harris and Defendant again proposed a similar agreement for the Court's approval. (See Letter from

3

Timothy Anderson, Esq. and Sharan R. Abraham, Esq. (Oct. 1, 2025) ("Harris Second Application") (Dkt. No. 51)).

Separately, a dispute emerged between Castillo and her former counsel regarding her payment of $1,073.70 in litigation costs. (*See* Letter from Bianca Castillo to Court (Mar. 14, 2025) 1 (Dkt. No. 41).) Castillo wrote Magistrate Judge Krause to explain that she received a notice from her former counsel demanding payment. (*See id.*) Judge Krause ordered Counsel to submit a letter to the Court explaining the basis for the payment demand and elaborating "how the firm's demand for payment . . . should be evaluated in the context of . . . the parties' application for settlement approval." (Dkt. No. 42 at 2–3 (Order).) Counsel submitted a letter to Judge Krause asserting that the firm was entitled to recoup the amount as half of the total costs expended in litigating the case. (*See* Letter from Sharan R. Abraham, Esq., to Court (Mar. 25, 2025) 3 (Dkt. No. 45).) In that letter, Counsel stated that the firm had "no objection to the Court reviewing" the filings regarding costs "in conjunction with its [settlement] review," but requested that the Court order Defendant to hold the disputed expenses in escrow while arbitration was ongoing. *Id.* at 5.

On September 17, 2025, Counsel filed a letter requesting that the Court order $1,073.70 of Castillo's settlement be paid directly to the law firm. (*See* Mot. for Attorneys' Fees 1 (Dkt. No. 50).) In that letter, Counsel represented that Castillo and the law firm had arbitrated their fee dispute and that the Firm was awarded $1,073.70 by the arbitrator; it attached the arbitration award as an exhibit. (*Id.* at 2; Mot. for Attorneys' Fees Ex. A, at 2–5.) Counsel modified the initial request that the disputed expenses be held in escrow, and asked instead that the Court order Defendant pay $1,073.70 from its settlement with Ms. Castillo directly to the firm. (Mot. for Attorneys' Fees at 2.)

On October 16, 2025, the Court issued an Opinion concluding that the Parties' Applications to approve their Second Settlement Agreements should be denied without prejudice. *See generally Castillo v. AVI Food Sys., Inc.*, No. 24-CV-6591, 2025 WL 2945435 (S.D.N.Y. Oct. 16, 2025). The Court explained that certain release clauses contained within the Agreements were "not limited to the claims asserted in the instant action or arising from the facts alleged in the lawsuit" and were therefore "overbroad." *Id.* at *5. Further, the Court concluded that there was insufficient information before it to evaluate whether the amount the Plaintiffs would receive was "fair and reasonable," in part because counsel did not provide supporting declarations or exhibits substantiating the accuracy of their calculations or the sufficiency of the amount awarded to Plaintiff. *Id.* at *5–6.

The Court also directed Castillo's former counsel to "provide supplemental authority for the proposition that the Court could, in fact, issue" an order directing that costs "be paid directly . . . to the firm . . . in the absence of the firm having a lien on Castillo's recovery in this case," and Castillo was requested to indicate whether she opposed this Motion. *Id.* at *8.

On October 24, 2025, Castillo's former counsel submitted a supplemental letter brief arguing that the Court could order that the outstanding arbitration award be paid out of Castillo's award in this Action. (*See* Letter from Sharan R. Abraham, Esq. to Court ("Supplemental Costs Letter") (Oct. 24, 2024) (Dkt. No. 54).) On October 31, 2025, Castillo submitted a letter to the Court expressing dissatisfaction with former counsel's representation, and taking the position that former counsel "ha[d] not earned any compensation for her services" in this Action. (Letter from Bianca Castillo to Court (Oct. 31, 2025) (Dkt. No. 55).)

On November 13, 2025, Castillo and Defendant sought approval of a new settlement agreement. (Letter from Timothy Anderson, Esq. and Bianca Castillo to Court (Nov. 13, 2025)

5

("Castillo Third Application") (Dkt. No. 56).)  On January 15, 2026, Harris and Defendant also submitted a new settlement agreement for approval by the Court.  (Renewed Motion for Approval of Settlement of Claims for Opt-in Plaintiff Wilbert Harris ("Harris Third Application") (Dkt. No. 57).)

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has held that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (internal quotation marks omitted), *cert. denied*, 577 U.S. 1067 (2016).  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4,

6

2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As multiple courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (internal quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to

7

evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187,

2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks omitted). To this

end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (internal quotation marks omitted) (quoting *Lopez v. Nights of*

*Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Analysis

    1.  Settlement Fairness

The Court's analysis of the Settlement Agreements begins and ends, regretfully, with the

Parties' release provision.  Given that "the FLSA is a uniquely protective statute," *Cheeks*, 796

F.3d at 207, courts will not approve settlement agreements that contain overly broad release

provisions that would "waive practically any possible claim against the defendants, including

unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at

206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also*

*Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y.

Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision

must be limited to the claims at issue in this action."); *Pascual v. Three Diamond Diner Corp.*,

No. 21-CV-3333, 2023 WL 1518513, at *4 (S.D.N.Y. Feb. 3, 2023) (same).  To do so would run

afoul of the Court's "duty to police unequal bargaining power between employees and

employers."  *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y.

July 6, 2015).

In light of the statute's uniquely protective nature, releases must "generally be related to wage and hour issues," *Castillo*, 2025 WL 2945435, at *4, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted). Accordingly, "a number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims at issue in this action." *Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) (alteration adopted and quotation marks omitted).

In the new Settlement and Release Agreement executed by Castillo and Defendant, there is a release provision that states:

> [Plaintiff] hereby promises not to sue and forever releases and discharges [Defendant], including its related, affiliated, and associated companies, direct or indirect parent or subsidiary companies, divisions, predecessors, successors, and assigns, and their owners, officers, directors, agents, employees, and attorneys ("Released Parties") from any and all claims, damages, costs, and attorneys' fees, known or unknown, arising under the FLSA and/or NYLL, that were asserted in the Complaint, or that arise from the conduct alleged in the Complaint, except as set forth in Paragraph 5 of this Agreement ("Released Claims"). The Released Claims include, but are not limited to, (1) claims for unpaid overtime; (2) claims for failure to pay wages on a timely basis; (3) claims for unpaid minimum wages; (4) claims for violation of a spread of hours requirement; (5) claims for unlawful deductions from wages; (6) claims for failure to provide accurate wage statements; (7) claims for failure to provide accurate wage notices; and (8) claims for retaliation under the FLSA and NYLL. [Plaintiff] also waives any right to become, and promises not to consent to become, a participant, member, or named representative of any class or collective in any case in which Released Claims are asserted against [Defendant] that involve events that have occurred prior to the date she signs this agreement.

(Castillo Third Settlement Application, Ex. A ("Castillo Settlement Agreement") 2 (Dkt. No. 56-1).) The release provision included in Harris's release agreement is effectively identical, except that it does not specify that it includes "claims for retaliation under the FLSA and NYLL."

9

(Harris Third Settlement Application, Ex. A ("Harris Settlement Agreement") 3 (Dkt. No. 57-1).)

Pursuant to Paragraph 5 of the Agreement, the release included in Castillo's agreement excludes

certain claims, as follows:

> This Agreement does not apply to any claims or rights that may arise after the date [Plaintiff] signs this Agreement or to any vested rights [Plaintiff] may have under any employee benefit plans.  Nothing in this Agreement shall be construed to prohibit [Plaintiff] from filing a charge or complaint challenging the validity of this Agreement; filing a charge or complaint with, reporting possible violations of any law or regulation to, making disclosures to, and/or participating in any investigation or proceeding conducted by the National Labor Relations Board, Equal Employment Opportunity Commission, Department of Labor, Securities and Exchange Commission, and/or any federal, state, or local agency charged with the enforcement of employment laws; or participating in any investigation or proceeding conducted by such administrative agencies.  Notwithstanding the forgoing [*sic*], to the extent not precluded by law, [Plaintiff] waives any right to monetary damages or other relief arising from any such charges, complaints, or claims premised on the Released Claims.  Further, nothing set forth herein prevents [Plaintiff] from exercising her rights under Section 7 of the National Labor Relations Act.  Moreover, regardless of whether [Plaintiff] signs this Agreement, nothing in any Company agreement, policy, or practice, including this Agreement, requires the payment of liquidated damages or forfeiture of all or part of the consideration for the release set forth herein for violations of a nondisclosure or nondisparagement clause or requires any affirmative statement that [Plaintiff] was not in fact subject to unlawful discrimination, including discriminatory harassment or retaliation.

(Castillo Settlement Agreement 2–3.)  The release provision in Harris's Agreement is subject to

an effectively identical limitation.  (*See* Harris Settlement Agreement 3.)  This release is

appropriately limited in scope.  Specifically, the language that identifies the released claims as

those "that were asserted in the Complaint, or that arise from the conduct alleged in the

Complaint," cabins the scope of the release such that it would encompass *only* "the claims at

issue in this action" or claims with "the identical factual predicate as the settled conduct."

*Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *4

(S.D.N.Y. Oct. 5, 2020) (quotation marks and citations omitted); *see also Kazadavenko v. Atl.*

*Adult Day Care Ctr. Inc.*, No. 21-CV-3284, 2022 WL 2467541, at *3 (E.D.N.Y. Apr. 14, 2022)

("This release, limited to wage and hour claims, is proper and appropriate."). It does not encompass prospective claims, nor does it encompass other causes of action (like discrimination claims) that might exist based on facts other than those described here. *See Rojas v. B E F Restaurante Inc.*, No. 23-CV-6160, 2023 WL 8039473, at *3 (S.D.N.Y. Nov. 20, 2023) ("[The release] is specifically limited to wage and hour claims and does not release or encompass future claims. As such, the provision here is reasonable."); *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *5 (S.D.N.Y. June 14, 2022) (noting that the release would not encompass "prospective discrimination claims" but was instead limited to those claims that related "specifically to wage and hour issues" stemming from past employment).

This release would be appropriately limited in scope, absent another portion of the Settlement Agreement, which retains the earlier, broader language that (as explained in this Court's earlier Opinion) is impermissible in a settlement evaluated under *Cheeks*. Elsewhere in the Settlement Agreements, each provides that the "Settlement Payment is made in full and complete settlement of any and all claims that were asserted in the Lawsuit **or could have been asserted in the Lawsuit** . . . ." (Castillo Settlement Agreement 2 (emphasis added); Harris Settlement Agreement 2 (same).) Unfortunately, the terms of this broader provision "are not limited to the claims asserted in the instant action or arising from the facts alleged in the lawsuit," *Castillo*, 2025 WL 2945435, at *5, including because if Plaintiffs had any other claims against Defendant that were subject to federal jurisdiction—such as a Title VII claim—they *could have been asserted* in this Action even if they lacked a shared factual predicate with the claims that *were* asserted here. *Cucul v. Major Cleaning, Inc.*, 761 F. Supp. 3d 545, 555 (E.D.N.Y. 2025) (rejecting a settlement application with a release agreement that "could also include" among other things, "claims for . . . employment discrimination"); *see also McDermott*

*v. ArchCare Cmty. Servs., Inc.*, No. 22-CV-3051, 2023 WL 8258003, at *5 (S.D.N.Y. Nov. 28, 2023) ("Courts have repeatedly cautioned that release language in settlements submitted for approval pursuant to *Cheeks* should be limited to the wage-and-hour claims asserted in the action and **related** claims that could have been asserted." (emphasis added)).[2]  Such a general release, even when executed in the context of a specific action, may reach claims far beyond what a *pro se* Plaintiff is aware that she is settling.  *See, e.g.*, *Caraballo v. City of New York*, No. 24-2051, 2025 WL 1430152, at *2–3 (2d Cir. May 19, 2025) (summary order) (noting a string of cases "interpret[ing] . . . general releases" where the Second Circuit has, applying New York law, "summarily affirmed the grant of a dispositive motion where claims in one action were released based on a general release signed in a separate action," even when those actions appear to be wholly unrelated, and even where a party was "*pro se* in reviewing and signing [a] [g]eneral [r]elease," and may "not have *actually* understood it to cover . . . [unrelated] federal claims"); *Smith v. City of New York*, No. 116, --- N.E.3d ---, 2025 WL 3671272, at *1 (N.Y. Dec. 18, 2025) (explaining that a clear and unambiguous general release "of 'any and all' claims" entered into as part of a settlement of one case entitled a defendant to summary judgment in a different case based on separate facts).

As the release is not limited to the claims asserted in this Action and those claims that stem from the same factual predicate described in the Complaint, the Court cannot approve the settlement applications.

---

[2] The Court might well have approved this Settlement if the sentence contained the same limitation that is included in the successive sentence, which says that the Agreement resolves "claims . . . [Plaintiff] could have asserted in the Lawsuit **based on the facts alleged in the Complaint**." (Castillo Settlement Application 2 (emphasis added); Harris Settlement Application 2 (same).)  But it did not.

2.  Attorneys' Costs

Next, the Court considers Castillo's former counsel's request that the Court order that counsel's costs incurred in representing Castillo be paid out of her settlement in this Action.  To address this request, the Court begins by determining what, precisely, former counsel is asking the Court to do.  As explained in the Court's previous Opinion, former counsel has expressly disavowed any argument that they are asserting a lien upon Plaintiff's recovery.  (*See* Supplemental Costs Letter 1 ("[T]he Firm confirmed that it was 'not asserting a lien against Plaintiff's claims although it maintains its right to seek recovery of any costs that we incurred on her behalf from her in a different forum.'").)  Former counsel argues that, despite the absence of a lien, their firm is entitled to recover reasonable out of pocket expenses incurred in the course of representing Castillo, citing the doctrine of *quantum meruit*.  (*Id.* at 2–3.)  Former counsel also describes, however, that the fees dispute was already subject to a Part 137 arbitration.  (*Id.* at 3.)  Accordingly, although the firm appears to be asking the Court to exercise "ancillary jurisdiction" over some claim—presumably a *quantum meruit* claim—this dispute has already been arbitrated. (*Id.*)  Materials submitted by former counsel suggest that the fee dispute was arbitrated in the 10th Judicial District – Nassau County within the New York State court system.  (Mot. for Attorney Fees, Ex. A ("Arbitration Award") 2 (Dkt. No. 50-1).)  These materials also suggest that the resulting arbitration award was issued on June 6, 2025.  (*Id.* at 3.)

Accordingly, and despite the reference to the doctrine of *quantum meruit*, former counsel is not asking the Court to decide a claim over which the Court would exercise its supplemental or "ancillary" jurisdiction.  (*See generally* Supplemental Costs Letter.)  Instead, former counsel is asking the Court to enforce an *already decided* arbitration award that encompasses the dispute (*i.e.*, that already resolved the outstanding costs that might otherwise form the basis and supply

the injury underlying a *quantum meruit* cause of action). *Cf. Time Warner Cable of New York City LLC v. Int'l Bhd. of Elec. Workers*, 170 F. Supp. 3d 392, 400 (E.D.N.Y. 2016) ("Because the questions raised by [the] plaintiff's complaint have been submitted to, and resolved by, binding arbitration, the only question before the court is whether to enforce the final arbitral award."). Therefore, the question before the Court is not whether granting costs is appropriate under the doctrine of *quantum meruit*, but rather whether the Court has the jurisdiction to (and whether it should) enforce the existing arbitration award. *See Trs. of Empire State Carpenters Annuity v. John J. Pausley, Inc.*, No. 13-CV-1629, 2014 WL 2711914, at *3 (E.D.N.Y. June 16, 2014) (exploring whether the district court had jurisdiction to confirm an arbitration award, and under which statute); *Colavito v. Hockmeyer Equip. Corp.*, 605 F. Supp. 1482, 1485 (S.D.N.Y. 1985) (describing scope of jurisdiction under the Federal Arbitration Act). Accordingly, the Court must consider whether the request to confirm the arbitrations award is properly resolved in this forum.

"[A]ll attorneys in New York are required to participate in a fee dispute resolution program . . . [promulgated as] Part 137 of the Rules of the Chief Administrator[.] [This program] was established as a mechanism for the informal and expeditious resolution of fee disputes between attorneys and clients through arbitration and mediation." 2 Joel R. Brandes, Law and the Family New York § 26:39 (2025-2026 ed.) (footnotes omitted); *see also* 22 N.Y.C.R.R. § 137.0 (same). The program encompasses fee disputes involving a sum between $1,000 and $50,000 and certain other disputes, *see* 22 N.Y.C.R.R. § 137.1, and the right to arbitrate a fee dispute under the program is exercised by the client, *id.* § 137.2(a). Part 137 arbitration is "mandatory for an attorney if requested by a client," and "the arbitration award . . . [is] final and binding unless *de novo* review is sought" pursuant to the appropriate procedures.

14

*Id.* The fee dispute program is, by default, "established and administered by a local bar association (the arbitral body)," which establishes "written instructions and procedures" for the program and handles other administrative mechanisms. *Id.* §§ 137.4(a), (b)(1). The administrative code further provides that the "fee dispute shall be heard by the arbitral body handling disputes in the county in which the majority of the legal services were performed." *Id.* § 137.5.

Oddly enough, the text of Article 137 does not explain how the award should be enforced in the event of non-payment by the losing party. *See generally* 22 N.Y.C.R.R. §§ 137.0 et seq. Nevertheless, the New York Court System clarifies that "if a party who is required to pay does not do so, the 'winner' must confirm the arbitration award in the appropriate court, within one year after the date of delivery of the award. The award is then entered as a judgment which makes the award enforceable through the court. Confirmation of arbitration awards is governed by [NY] CPLR 7510." *See* New York State Unified Court System, FDRP Getting Started for Clients (last visited May 18, 2026), https://www.nycourts.gov/attorney-client-fee-dispute-resolution-program/fdrp-getting-started-clients#what-to-expect-once-the-fee-arbitration-is-over [https://perma.cc/4RVN-BKEH]. New York's Civil Practice Law and Rules § 7510 provides that "[t]he court shall confirm an award upon application of a party made within one year after its delivery to them, unless the award is vacated or modified upon a ground specified in section seventy-five hundred eleven of this article." And the documents that apparently circulated with former counsel's award specify that "[i]f . . . the [P]arty against whom the award has been rendered . . . does not pay, [the award recipient] must proceed to [c]onfirm the [a]ward by commencing an action with the Court requesting the Court [c]onfirm the [a]rbitration [a]ward and enter the award as an enforceable judgment against the owing party." (Arbitration Award 5.)

15

None of these documents appear to specify *which* court these requests should be targeted toward, though it would not be unreasonable to assume that the documents are referencing the 10th Judicial District in Nassau County, as that court appears to have mailed the notice of arbitration award and arbitration award itself. (*Id.* at 2.)

As the foregoing illustrates, the fee dispute program is by its very nature a creature of state law. The Court has been unable to find a single federal court order confirming an arbitration award issued under Part 137; the few orders that discuss the practice mention it for other reasons not relevant here. *See, e.g.*, *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11-CV-4971, 2011 WL 6957595, at *10–11 (S.D.N.Y. Dec. 28, 2011) (discussing Part 137 arbitration process to explain why the court would not stay ongoing arbitration). Because, as explained above, Part 137 of the NYCCR does not clearly identify where such an award should be affirmed, it is unclear whether this Court has the authority and/or is the proper venue to issue the requested relief, although it is possible some other statute confers that authority upon the Court. *See* David D. Siegel, *Rule 137 on Mandatory Arbitration of Attorneys' Fees Disputes Takes Effect January 1, 2002, and Applies in All (Not Just Matrimonial) Actions, Part III*, 119 Siegel's Prac. Rev. 1 (2002) ("Under Rule 137, the arbitration does not ordinarily arise out of a court action and so has no obvious place for entry of the award. But that may be a distinction without a difference. . . . The venue of the arbitration is already prescribed by Rule 137.5; a court in that county would then be the obvious place for the rule to direct entry. If the confirmation procedures of CPLR Article 75 itself had to be followed, an application of the venue instructions of CPLR 7502(a) would make a court in the county 'where the arbitration was held' proper venue and hence the proper place for entering the award."); *see also* 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of

16

the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, . . . . If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.").  It is also true that, where there is a proper basis for jurisdiction, federal courts can entertain requests made pursuant to C.P.L.R. 7510.  *See Res. Grp. Int'l Ltd. v. Chishti*, No. 25-CV-1021, 2025 WL 1725454, at *2–3 (S.D.N.Y. June 18, 2025) (applying New York law to conflicting requests to confirm or deny an arbitration award, but noting that it was not immediately clear that New York law, rather than the Federal Arbitration Act, would govern), *motion for relief from judgment denied*, 794 F. Supp. 3d 234 (S.D.N.Y. 2025); *Diack v. Navien, Inc.*, No. 22-CV-164, 2022 WL 2467645, at *3 (E.D.N.Y. Feb. 5, 2022) ("[T]here is no doubt that an Article 75 proceeding is removable based on diversity even though it is a special proceeding under CPLR [Section] 7510." (alterations adopted, quotation marks omitted)).

In short, it is still unclear (1) whether this Court has jurisdiction and/or is the proper venue to seek confirmation of the underlying arbitration award, and (2) even if so, why the Court should order that this award be paid out of Castillo's recovery here, rather than simply order Castillo to pay the award.  The Court notes further that, it seems, the statute of limitations to seek recovery of this fee in an Article 75 proceeding in state court has not yet run.  (*See* Arbitration Award 3.)  Accordingly, the Court directs Castillo's former counsel to indicate, by no later than 3 days from the date of this Order, whether counsel would like to brief the question of the award's enforceability in federal court, and specifically by the District Court for the Southern

17

District of New York, or whether Counsel would like to withdraw this claim and refile in a state forum.

### III.  Conclusion

For the reasons set forth above, the request for approval of the FLSA settlement agreements is denied without prejudice to renewal.  The request for the Court to confirm the Part 137 arbitration award is denied without prejudice to renewal.  The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 50.

SO ORDERED.

Dated:    May 22, 2026
          White Plains, New York

KENNETH M. KARAS
United States District Judge